

U.S. Department of Justice

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

**AUG 1 0 2011**

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

*United States Attorney*
*District of Maryland*
*Northern Division*

| | | |
|---|---|---|
| *Rod J. Rosenstein*<br>*United States Attorney*<br><br>*P. Michael Cunningham*<br>*Assistant United States Attorney* | · *36 South Charles Street*<br>*Fourth Floor*<br>*Baltimore, Maryland 21201* | *DIRECT: 410-209-4884*<br>*MAIN: 410-209-4800*<br>*FAX: 410-962-3091*<br>*TTY/TDD: 410-962-4462*<br>*michael.cunningham@usdoj.gov* |

July 1, 2011

Gary W. Christopher, Esquire
Office of the Federal Public Defender
100 South Charles Street
Tower II, Suite 1100
Baltimore, Maryland 21201

  Re: *United States v. Bret W. Desmarteau*
    Criminal # <u>JFM-10-0517</u>

Dear Mr. Christopher:

  This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by July 12, 2011, it will be deemed withdrawn. The terms of the agreement are as follows:

<u>Offense of Conviction</u>

  1. The Defendant agrees to plead guilty to Count Three of the Superceding Indictment now pending against him, which charges him with possession of material containing images of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

<u>Elements of the Offense</u>

  2. The elements of the offense to which the Defendant has agreed to plead guilty, and which the Government would prove if the case went to trial, are as follows:

    a. First, that on or about April 19, 2010, the Defendant knowingly possessed a visual depiction of sexually explicit conduct;

Revised 11/5/09



          b.        Second, that the Defendant knew that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct, and knew that the visual depiction was of such conduct; and

          c.        Third, that the visual depiction was transported in interstate or foreign commerce by any means, including by computer.

## Penalties

3.      a.        The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: imprisonment for not more than ten (10) years, followed by a term of supervised release of not more than life and a fine of $250,000. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

          b.        The defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

## Waiver of Rights

4.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

          a.        If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

          b.        If the Defendant elected a jury trial, the jury would be composed of

---

    [1]      Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

       c.     If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

       d.     The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

       e.     If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

       f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

       g.     If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

       h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

Advisory Sentencing Guidelines Apply

       5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant understand, agree and stipulate to the Statement of Facts as set forth in Attachment A hereto which would be proved beyond a reasonable doubt and to the following applicable sentencing guidelines factors:

a.      The base offense level is eighteen (18) pursuant to U.S.S.G. § 2G2.2(a)(1).  Pursuant to U.S.S.G. §2G2.2(b)(2), there is a two (2) level increase because the material involved a prepubescent minor.  Pursuant to U.S.S.G. §2G2.2(b)(4), there is a four (4) level increase because the material portrayed sadistic or masochistic conduct or other depictions of violence. Pursuant to U.S.S.G. §2G2.2(b)(6), there is a two (2) level increase because the possession involved the use of a computer.  Pursuant to U.S.S.G. §2G2.2(b)(7)(D), there is a five (5) level increase because the offense involved 600 or more images. The resulting offense level is **31** .

b.      This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty.  This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about his involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (vii) attempts to withdraw his plea of guilty.  Accordingly, the resulting sentencing guidelines offense level is **28** .

7.      The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income. The Defendant agrees, as part of this plea agreement, to undergo an FBI administered polygraph examination intended to address the subject of illegal sexual contact, as that term is defined at 18 U.S.C. § 2246(3).

## Obligations of the United States Attorney's Office

8.      At the time of sentencing, this Office will recommend a reasonable sentence pursuant to 18 U.S.C. § 3553.  Based on information currently available to this Office, it is anticipated that said recommendation will be not less than the low end of the applicable guideline range.  At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

9.      The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the

Defendant's background, character and conduct.

Waiver of Appeal

10. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds **97** months' imprisonment and/or a term of supervised release exceeding 5 years; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below **60** months' imprisonment.

c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

Court Not a Party

11. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone,

-5-

withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Forfeiture

12.     The defendant agrees to forfeit all right, title and interest in the property seized by law enforcement authorities from his residence on or about April 19, 2010. He further agrees to take whatever steps are necessary to pass clear title to those properties to the United States.

13.     As part of his obligations under this plea agreement, the defendant expressly agrees not to seek post-conviction, habeas or any type of legal relief whatsoever in connection with his prior convictions.

## Entire Agreement

14.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Addendum, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and addendum and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this letter, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By:

P. Michael Cunningham
Assistant United States Attorney

-6-

I have read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

08JUL2011
Date

Bret W. Desmarteau

I am Bret W. Desmarteau's attorney. I have carefully reviewed every part of this agreement with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

July 6, 2011
Date

Gary W. Christopher, Esquire

**EXHIBIT A**
**STIPULATED FACTS**

*The undersigned parties hereby stipulate and agree that if this case had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Bret W. Desmarteau, age 30, was, at the time of the offenses described herein, a resident of Laurel, Anne Arundel County, Maryland. He was a member of the National Guard and periodically employed by the 29th Infantry Division of the Maryland National Guard. He was deployed to Iraq in 2007-08.

In September 2009, an FBI undercover agent (UC) operating on an internet peer-to-peer ("P2P") site suspected of being used for the receipt and distribution of child pornography, requested access to profile "Funnyguy1." Once the UC was granted access by profile "Funnyguy1," the UC was able to browse the available pictures being shared by "Funnyguy1," chat with the owner of "Funnyguy1," identify the IP address being used by "Funnyguy1" as 72.71.161.77, and download 16 full size images and many preview thumbnail photos. Most of the images contained pictures of boys, both prepubescent and post-pubescent, engaged in sexually explicit conduct or lewd and lascivious display of the genitalia.

The FBI ascertained that IP address 72.71.161.77 was assigned on that time and date to a female with the initials L.L., 2456 Apple Blossom Lane, Unit 203, Odenton, Maryland 21113. The account listed a telephone number of 516-383-XXXX. On September 10 and 11, 2009, two additional UC sessions were able to successfully download similar material from "Funnyguy1." The IP addresses for these later downloads also resolved to the same physical address on Apple Blossom Lane in Odenton, Maryland.

On January 5, 2010, another FBI UC, using the same P2P environment, was able to browse photos being shared by a profile bearing the name "gaypthc." The UC downloaded 22 images and 4 videos from IP address 71.255.222.201. The UC observed over 10,000 images available for download from this profile.

The UC identified the IP address 71.255.222.201 as being under the control of Verizon. On January 11, 2010, the UC issued a subpoena to Verizon and learned the IP address was assigned to L.L., 2456 Apple Blossom Lane, Unit 203, Odenton, Maryland 21113.

On January 14, 2010, a different FBI UC was able to download pictures and videos from "gaypthc," from IP address 63.227.51.67. The UC was able to determine this IP address was under the control of Qwest Communications and a subpoena served on Qwest identified it was assigned to a location on Ft. Huachuca, Arizona. Through assistance with foreign law enforcement, it was discovered that when the profile "gaypthc" was registered on the relevant P2P environment, an e-mail address was identified as ninevolt_@hotmail.com. An open Internet search of the e-mail address identified a profile called "NINEVOLT VW" on a social networking website. The profile for this user matched the description of the defendant. Coincidentally, in January 2010, the Defendant traveled to Ft. Huachuca, AZ, intending to participate in a class related to his military duties.

FBI investigators learned that the Defendant was living at 2456 Apple Blossom Lane, Odenton, Maryland, where he rented residential space from the owner, LL. The Defendant owned and operated a newer model dark colored SUV in March 2010, which was noteworthy because the vehicle has FBI stickers on them. FBI surveillance observed a dark color Ford Expedition bearing New Hampshire license plate "-NINE-" parked outside 2456 Apple Blossom Lane, Odenton, Maryland. This vehicle also had the words "FBI-CD-ERT NONPURSUIT VEHICLE" stenciled across the rear hatch door and the words "FBI-CD-ERT POV D7289" stenciled on the driver and

-9-

passenger doors. New Hampshire State Police identified that at that time, the Defendant had a

vanity vehicle license plate – "-NINE-"– registered in New Hampshire, and previously had the

vanity vehicle license plate "9VOLT."

On April 19, 2010, the FBI executed a search warrant authorized by United States Magistrate

Judge Jillyn K. Schulze, at the location where the Defendant resided, and seized computers and

computer peripherals. A forensic evaluation of the computers revealed numerous files containing

child pornography, including at least the following files:

(1)     10 and 13.wmv – a video file of a naked prepubescent boy undressing a post
        pubescent boy then the younger boy performs oral sex on older boy and then
        older boy performs oral sex on younger boy;

(2)     5(brotherlove).wmv – a video file of five naked boys, approximately 10 to 15 years
        of age are in what appears to be a hotel room with a Jacuzzi bath tub.  Two of the
        boys are in the tub while the third boy watches the fourth boy attempt to have anal
        intercourse with the fifth boy;

(3)     : 5 yr lutscht papas schwanz.avi – a video file of a young girl, less than five years
        of age sitting on the lap of a man who forces the girl to perform oral sex on his erect
        penis; the man then masturbates and ejaculates on the girl's face and forces her to put
        the penis back in her mouth;

(4)     3 yo girl squirms as dad shoots cum into her mouth.avi – a video file of a bare-
        chested female who appears to be no older than 3 years of age laying on a bed while
        an adult male uses force to control her hands while he ejaculates into her mouth, then
        prevents her from cleaning herself until he wipes her face and chest with what
        appears to be a sock;

(5)     14 yo Alex & husband Vint(1).avi – a video file of a young boy laying naked next to
        a naked adult male stroking the adult's erect penis.

(6)     1256745472168.jpg – an image of a prepubescent female laying on a bed with her
        legs spread displaying her vagina;

(7)     a13 (3).jpg – an image of a close up picture of prepubescent boy with his penis
        inserted inside a suction tube;

(8)     _mario03.jpg – an image of a toddler boy, no older than 3 years of age, laying on a
        open diaper with legs spread wide open and buttocks up in the air displaying genitalia
        and open anus while an adult male hand is about ready to touch the boy's bottom;

-10-

(9)     DSC01880.jpg – an image of a baby, approximately 4 to 12 months of age, with a bib around its neck and an erect adult penis being held under the baby's chin;

(10)    5C22re2.jpg – an image of a small frame naked person of about 9 to 15 years of age, laying face down on a bed with hands bound behind their back with duct tape and ankles are bound together with duct tape.

The Defendant's computers contained child pornography that portrayed a prepubescent minor as well as material that portrayed sadistic or masochistic conduct or other depictions of violence. There were far in excess of 600 images of child pornography on the Defendant's computer and the investigation also revealed that he traded child pornography with an undercover law enforcement operative in Canada prior to the search.

At all relevant times, the images referenced above depicted "sexually explicit" conduct within the meaning of Title 18, United States Code, Section 2256(2) (A).  Furthermore, at all relevant times, at least one individual depicted in the above-referenced images was a minor within the meaning of Title 18, United States Code, Section 2256(1).

I have read this statement of facts, and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

08 JUL 2011
Date

July 8, 2011
Date

Bret W. Desmarteau
Defendant

Gary W. Christopher, Esquire
Defendant's Counsel

-11-